## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JACOB E. NICHOLS,

       Plaintiff,

vs.                                                                    No. CV 18-00255 RB/SCY

THE GEO GROUP, J. BOWEN,
DONALD VIGIL, CAPT. MEDINA,
LT. BEATTY, C. BAKER, A. DURAN,

       Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Jacob E. Nichols's Prisoner's Civil Rights Complaint and Amended Prisoner's Civil Rights Complaint. (Docs. 1; 5.) The Court will dismiss the Complaint and Amended Complaint without prejudice and will grant Mr. Nichols leave to file a second amended complaint.

### I.      Factual and Procedural Background

Mr. Nichols filed a Prisoner's Civil Rights Complaint asserting claims under 42 U.S.C. § 1983. (Doc. 1.) His Complaint names as Defendants the Geo Group, J. Bowen, Donald Vigil, Cpt. Medina, Lt. Beatty, C. Baker, and A. Duran. (*Id.* at 1.) Mr. Nichols claims to be a member of the Asatru faith, which is a polytheistic Norse religion devoted to honoring the Gods, Goddesses, and the practitioner's ancestors. (Docs. 1 at 4; 5 at 2). *See also* U.S. Department of Justice, Federal Bureau of Prisons, Inmate Religious Beliefs and Practices at 220 (2002). Mr. Nichols alleges that on January 26, 2018, prison officials conducted a facility-wide shakedown. During the shakedown, Mr. Nichols's Asatru prayerbook was taken and Defendants denied its return both at the time of the shakedown and afterwards. (Doc. 1 at 4.) Mr. Nichols sets out two claims: (1) denial of First

1

Amendment freedom of religion rights; and (2) violation of Eighth Amendment rights (deliberate indifference). (*Id.* at 4–5.)

Mr. Nichols filed both informal and formal grievances, which are attached to the Complaint. (*Id.* at 4, 7–13.) The grievances state that a large blue notebook tied with string was confiscated during the shakedown because it was altered from its original state. (*Id.* at 7.) He claimed that the notebook contained his religious materials. Prison officials responded that over half of the notes did not pertain to religious beliefs and because the notebook was not in its original state, it was considered contraband. (*Id.* at 7.) In a subsequent response to his formal grievance, prison officials indicated that he would be receiving any religious materials back, but not the notebook. (*Id.* at 13.)  It is not clear from the record whether any religious materials were returned or whether the notebook was lost or discarded.

Mr. Nichols submitted an amendment to his Complaint. (Doc. 5.) His amendment states that the taking of his prayer book prevented him from using it in daily prayer with readings and practicing unspecified rituals that he claims were written in the prayer book. (*Id.* at 2.) He also claims that the inability to form a prayer group has caused him undue stress and discomfort. (*Id.* at 3.) His amended prayer for relief seeks $50,000 compensatory damages, $20,000 punitive damages, court costs, filing fees, attorney fees, equitable relief, and a letter of apology from non-party New Mexico Department of Corrections. (*Id.* at 5–6.)

## II.     The Law Regarding Dismissals for Failure to State a Claim

Mr. Nichols is proceeding pro se and *in forma pauperis*. (Docs. 1; 3.) The Court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* for failure to state a claim upon which relief may be granted under either Federal Rule of Civil Procedure 12(b)(6) or 28 U.S.C.

§ 1915(e)(2)(B). A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6) the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. *Id.*; *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Under § 1915(e)(2)(B) the court may dismiss the complaint at any time if the court determines the action fails to state a claim upon which relief may be granted. § 1915(e)(2)(B)(2). The authority granted by § 1915 permits the court the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Hall*, 935 F.2d at 1109. The authority to "pierce the veil of the complaint's factual allegations" means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations. *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). The court is not required to accept the truth of the plaintiff's allegations but, instead, may go beyond the pleadings and consider any other materials filed by the parties, as well as court proceedings subject to judicial notice. *Id.*

In reviewing a pro se complaint, the Court liberally construes the factual allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992). However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants, and a pro se plaintiff

must abide by the applicable rules of court. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994). The court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the court assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

In deciding whether to dismiss the complaint in whole or in part, the court is to consider whether to allow the plaintiff an opportunity to amend the complaint. Pro se plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless amendment would be futile. *Hall*, 935 F.2d at 1109. An amendment is futile if the amended claims would also be subject to immediate dismissal under the Rule 12(b)(6) or § 1915(e)(2)(B) standards. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

III.     **Analysis of Plaintiff's Section 1983 Claims**

Mr. Nichols's claims are brought under 42 U.S.C. § 1983. (Doc. 1 at 1.) The exclusive remedy for vindication of constitutional violations is under § 1983. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. A plaintiff must plead that each government official, through the official's own individual actions, has

violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). In a Section 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

In this case, Mr. Nichols makes generalized allegations that his prayerbook was taken and "denied return by Wardens Brown and Vigil, as well as Capt. Medina, Cecilia Baker, A. Duran." (Doc. 1 at 4.) The Complaint and Amended Complaint do not contain factual allegations setting out the individualized actions of each Defendant or specifically how the actions of any Defendant violated his constitutional rights. *Robbins*, 519 F.3d at 1249–50. Nor do they contain any factual allegations regarding Defendant Geo Group. The allegations of the Complaint and Amended Complaint do not state a § 1983 claim against any Defendant. *See Iqbal*, 556 U.S. at 676. Further, even if the allegations were sufficient to state a § 1983 claim against a defendant, they do not establish a violation of either First or Eighth Amendment rights.

### A.      First Amendment Claims

Mr. Nichols claims violation of his First Amendment Rights. (Doc. 1 at 4.) An inmate retains protections afforded by the First Amendment, including that no law shall prohibit the free exercise of religion. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). However, the First Amendment protection is not without reasonable limitations in the prison setting. Prison inmates are subject to the "necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Under the Free Exercise Clause, "when a prison regulation impinges on

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The initial questions in a First Amendment free exercise claim are whether the plaintiff's beliefs are religious in nature and, if so, whether those religious beliefs are sincerely held. *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997).[1] Prison officials may then identify the legitimate penological interests that justify the impinging regulation. *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). The court balances the factors set forth in *Turner*, 482 U.S. at 89–91, to determine the reasonableness of the regulation: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Boles*, 486 F.3d at 1181; *see also Kay*, 500 F.3d at 1218–19.

The Supreme Court has recognized that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). Courts are to accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove

---

[1] The Court assumes for purposes of this Memorandum Opinion and Order that Mr. Nichols's beliefs are sincerely held.

it. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Toevs v. Reid*, 685 F.3d 903, 910 (10th Cir. 2012) (citing *Overton*, 539 U.S. at 132); *Bell v. Wolfish*, 441 U.S. 520, 550–51 (1979) (upheld limitations on hard-bound books stating "[i]t hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings . . . . They also are difficult to search effectively.")).

The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity. Where a prison regulation limits an inmate's ability to engage in a particular religious practice, the second prong of *Turner* requires an examination of whether there are other means available to the inmate for expressing his religious beliefs. If the prison affords the inmate alternative means of expressing his religious beliefs, that fact tends to support the conclusion that the regulation at issue is reasonable. Where other avenues remain available for the exercise of the inmate's religious faith, "courts should be particularly conscious of the 'measure of judicial deference owed to correction officials . . . .'" *Turner*, 482 U.S. at 90 (*quoting Pell v. Procunier*, 417 U.S. 817, 827 (1974)); *see also DeHart v. Horn*, 227 F.3d 47, 57, 59 (3d Cir. 2000).

Mr. Nichols's First Amendment claim fails for several reasons. First, the claim fails because he has not shown that his right to practice his religion was substantially burdened by a prison regulation. As previously noted, the First Amendment is concerned with prison *regulations* that pervasively restrict an inmate's right to practice his religion. *Boles*, 486 F.3d at 1182. Plaintiff has identified no prison rule or regulation that affected his ability to worship and, in the absence of any identified regulation, his Complaint and Amended Complaint fail to state a First Amendment claim for relief. *See Iqbal*, 556 U.S. at 676.

Further, his allegations do not show any act that rises to the level of a constitutional violation. Instead, his claims are based upon prison officials' decision to confiscate his materials. This shows, at most, an isolated negligent act that does not rise to the level of a constitutional violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (Defendants' actions were, at most, isolated acts of negligence, not pervasive violations of a right to free exercise of religion); *see also Peterson v. Lampert*, No. 11-8107, 2012 WL 4857050, at *1–2 (10th Cir. Oct. 15, 2012) (prison's losing box of religious materials including a crystal wand, tarot cards, and satanic bible was no more than an isolated act of negligence and did not give rise to a constitutional violation); *White v. Glantz*, No. 92-5169, 1993 WL 53098, at *2 (10th Cir. Feb. 25, 1993) ("Although the Plaintiff was most certainly annoyed and exasperated [the] isolated negligent act of the Defendants cannot support a claim that the Plaintiff was denied his First Amendment right to freedom of religion.").

Last, even assuming confiscation of the notebook rose to the level of a constitutional violation, Mr. Nichols does not explain how the material or a prayer group were necessary to his worship and confiscation of the materials or denial of a prayer group were a substantial burden on his religious practice. (*See* Docs. 1 at 4; 5 at 2–3.) Mr. Nichols alleges that Defendants violated his constitutional rights by confiscating and failing to return his religious materials. (Doc. 1 at 4–5.) He explained to Defendants that the notebook contained religious materials, but they were still confiscated. (Doc. 1 at 4.) He alleges that the confiscation of his religious materials "prevented [him] from using it in daily prayer with readings and practicing rituals that were written in this prayer book." (Doc. 5 at 2.) Although he generally alleges confiscation of religious materials and that he was prevented from using the notebook in daily prayer, Mr. Nichols has never explained specifically what "religious materials" were confiscated or how their absence prevented him from

performing any identified ritual. He has never described what the confiscated materials contained or how their absence prevented him from practicing his religion. Nor does he make more than a generalized allegation that he tried to form a prayer group but was unsuccessful. (Doc. 5.) Neither the Complaint nor the Amended Complaint show that his right to practice his religion was substantially burdened. *See Boles*, 486 F.3d at 1182.

The Court finds that Mr. Nichols has failed to state a claim that amounts to a free-exercise violation. Although he provides a description of the item that was seized, this does not cure the deficiency of his claim—namely, that he has failed to allege, much less show, that his right to practice his religion was substantially burdened by a prison regulation. *See id.* The Complaint and Amended Complaint fail to state a First Amendment claim for relief.

### B.      Eighth Amendment Claims

Mr. Nichols also claims that confiscation of his notebook violated his Eighth Amendment rights. (Doc. 1 at 5.) Inmates alleging Eighth Amendment violations based on prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, (1994); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Farmer*, 511 U.S. at 838–40; *Wallis*, 70 F.3d at 1077. The Eighth Amendment standard requires proof of both an objective and a subjective component. *Hudson v. McMillian,* 503 U.S. 1 (1992). If either of these components is not established, the court need not inquire as to the existence of the other. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

First, the deprivation alleged must objectively be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (*quoting Rhodes*

*v. Chapman*, 452 U.S. 337, 347 (1981)). In proving the objective component, an inmate must establish that there was both some degree of actual or potential injury, and that society considers the acts that the plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts. *Helling*, 509 U.S. at 36; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

The second subjective component requires that the prison official possesses a sufficiently culpable state of mind: "deliberate indifference to inmate health and safety." *Farmer*, 511 U.S. at 834–36. With regard to deliberate indifference, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component requires proof that the official was: (1) aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm; (2) actually made the inference that the substantial risk of serious harm to the plaintiff existed; and (3) knowingly disregarded the risk. *Id* at 844.

In this case, Mr. Nichols does not present any allegations that prison officials were deliberately indifferent to his health or safety by subjecting him to a substantial risk of serious harm. His claims relating to confiscation of his notebook do not establish that there was any degree of actual or potential injury or that society considers the acts that the he complains of to be so grave that they violate contemporary standards of decency. Neither the Complaint nor the Amended Complaint state an Eighth Amendment claim for relief.

## V.     The Court Will Grant Leave to Amend

The Complaint and Amended Complaint fail to state a sufficient claim for relief under Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B). The Court will grant Mr. Nichols an opportunity to amend

to remedy the defects in his pleading. *See Hall*, 935 F.2d at 1109. However, the Court cautions Mr. Nichols that any claim against an individual defendant must contain specific factual allegations identifying who each individual is, what that individual did, and how that individual's actions deprived Nichols of a constitutional right. *See Robbins,* 519 F.3d at 1249–50. Generalized and conclusory statements are not sufficient to state a claim for relief. *Twombly*, 550 U.S. at 555. If Nichols pursues any claims against an entity defendant, such as the Geo Group, then he must include allegations identifying a policy, regulation, or custom of Geo Group that was a direct cause or a moving force behind any violation of Nichols' civil rights. *Myers v. Okla. Cty Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

The Court will Order Mr. Nichols to amend the Complaint to allege any claims he believes he may have against any individual defendant, consistent with the requirements of Rule 11(b) and this Memorandum Opinion and Order. Nichols must file his amended complaint within 30 days of entry of this Memorandum Opinion and Order. Failure to file an amended complaint within that time may result in final dismissal of this action without further notice.

**IT IS ORDERED:**

(1) the Prisoner's Civil Rights Complaint and Amended Prisoner's Civil Rights Complaint filed by Plaintiff Jacob E. Nichols. (Docs. 1; 5) are **DISMISSED** without prejudice for failure to state a claim on which relief can be granted; and

(2) Mr. Nichols is granted leave to file an amended complaint within 30 days of entry of this Memorandum Opinion and Order.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE